UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| M.E.D., ) | |
| ) | |
| Plaintiff, ) | Case No. 5:25-cv-00094-GFVT |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| FRANK BISIGNANO, *Commissioner of the* ) | **ORDER** |
| *Social Security Administration.*, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff M.E.D. seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's administrative decision denying his application for Social Security Disability Insurance and Supplemental Security Income Benefits.[1] For the reasons stated below, the Court will **AFFIRM** the administrative decision.

**I**

M.E.D. filed his application for benefits on August 11, 2022, alleging disability beginning on September 2, 2021. [R. 10 at 1.] The application was denied initially and upon reconsideration. [*Id.* at 2.] M.E.D. then submitted a written request for a hearing on September 11, 2023. [*Id.*] A telephonic hearing occurred on January 30, 2024. [*Id.*] On May 1, 2024, an administrative law judge ("ALJ") found that M.E.D. was not disabled within the meaning of the Social Security Act. [R. 15 at 1.] M.E.D. requested review by the Appeals Council, who similarly denied M.E.D.'s request, thereby rendering the ALJ's May 1, 2024, decision the final decision of the Commissioner. [*Id.*]

---

[1] The claimant's initials are used in lieu of their name to protect their sensitive medical information contained throughout the Memorandum Opinion and Order.

In his Disability Report, M.E.D. alleges disability due to "epilepsy, major weakness in legs from epilepsy medicine," and a "slipped disc in back." [R. 6 at 298.] More specifically, M.E.D.'s "severe impairments continue to be degenerative disc disease of the cervical and lumbar regions of the spine, lumbar radiculopathy, seizure disorder, [an]d obesity." [*Id.* at 33.] M.E.D. also suffers from depression and anxiety, but the ALJ did not consider these to be severe impairments. [*Id.*]

In evaluating a claim of disability, the ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520. First, if a claimant is performing a substantial gainful activity, he is not disabled. *Id.* § 404.1520(b). Second, if a claimant does "not have any impairment or combination of impairments which significantly limit[] [his] physical or mental ability to do basic work activities," then he does not have a severe impairment and is not "disabled" as defined by the regulations. *Id.* § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is "disabled." *Id.* § 404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairments experienced by the individual. *Id.* § 404.1520(e); 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." *Id.* § 404.1520(e), (f). The claimant has the ultimate burden of proving compliance with the first four steps. *Kyle v. Comm'r Of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). Fifth, if a claimant's impairments (considering his RFC, age, education, and past

2

work) prevent him from doing other work that exists in the national economy, he is "disabled." *Id.*; 20 C.F.R. § 404.1520.

In this case, the ALJ issued her written decision on May 1, 2024. [R. 6 at 22–45.] At Step 1, the ALJ found that M.E.D. has not engaged in substantial gainful activity since the onset date. [*Id.* at 33.] At Step 2, the ALJ found that M.E.D. had severe impairments including "degenerative disc disease of the cervical and lumbar regions of the spine, lumbar radiculopathy, seizure disorder, obesity." [*Id.*] At Step 3, the ALJ concluded that M.E.D. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," so her analysis continued to the next step. [*Id.* at 36.] At Step 4, the ALJ found that:

> Mr. [M.E.D.] has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). Specifically, he continues to be able to lift or carry up to 20 pounds occasionally, or up to 10 pounds frequently. He is able to stand or walk for up to 6 hours out of 8, and to sit for up to 6 hours out of 8. He is able to frequently push or pull with either upper extremity and occasionally with either lower extremity. He can occasionally climb stairs or ramps but cannot climb ladders or scaffolds. He can occasionally stoop, kneel, crouch or crawl. He can frequently reach overhead. He is able to perform work that allows him to avoid concentrated exposure to extreme temperatures, excessive wetness, excessive humidity, fumes, dust, smoke, pulmonary irritants, or concentrated vibration in the workplace. He is able to perform work that does not require commercial driving.

[*Id.* at 37.] Finally, at Step 5, the ALJ found that M.E.D. has "work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." [*Id.* at 43.] As a result, she concluded that M.E.D. was not disabled. [*Id.* at 44.] The Appeals Council denied his request for review. [*Id.*] at 6–9. M.E.D. now seeks judicial review in this Court.

**II**

3

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319–20 (6th Cir. 1987). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 536 5 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). A reviewing court, however, may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Hum. Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### A

M.E.D. argues that the ALJ erred in evaluating M.E.D.'s seizure-related conditions when issuing her Step 3 and RFC findings. [R. 10 at 14.] The ALJ acknowledged M.E.D.' epilepsy but found that his "seizure disorder did not meet or exceed medically equal listing 11.02." [R. 6 at

36.] M.E.D. argues this "is in contradiction to the evidence of the record showing reports by Plaintiff of frequent seizures in alignment with his complex partial seizure diagnosis and treatment." [R. 10 at 15.] The Commissioner disagrees with this contention, stating that substantial evidence supports the ALJ's conclusion that M.E.D. failed to meet his burden to prove that his impairments rendered him "disabled." [R. 15 at 4.] The Court agrees with the Commissioner.

At Step 3, the ALJ analyzes whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in Appendix 1. *See* 20 C.F.R. § 404.1520(d). A claimant can "equal" a listed impairment if her condition is medically equivalent. If the claimant meets or equals one of the impairments, she is per se disabled. The ALJ determined that M.E.D.'s impairments did not meet or medically equal any listing, including Listing 11.02, and that his impairments did not preclude him from a reduced range of light work. M.E.D. argues that his seizure activity "should meet listing 11.02 based on Part D of the listing as the whole of the record including both medical and non-medical testimony demonstrate dyscognitive seizure symptom patterns." [R. 10 at 15.]

Listing 11.02 defines dyscognitive seizures as those

> "characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure.

20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ found that

> Mr. [M.E.D.]'s seizure disorder does not meet or medically equal listing 11.02. While the record shows evidence of generalized idiopathic epilepsy and epileptic syndromes, the record does not contain objective evidence revealing generalized seizure every

5

> month, nor every two months. Mr. [M.E.D.] reports experiencing seizures, which he describes as "mini-seizures," on a weekly basis. However, the records generally note no concern for seizure activity (exh. B13F/6). There is a lack of clinical evidence to establish that he experiences dyscognitive seizures every week, let alone every two weeks. Furthermore, Mr. M.E.D. does not have "marked" limitation in physical functioning or in any of the area of mental functioning as required by paragraphs C and D of the listing. Clinical evidence showing that Mr. M.E.D. has normal gait, stance, musculoskeletal motion, motor function, and sensation supports a finding that Mr. [M.E.D.] does not have "marked" limitation in physical functioning. (exh. B1F/10; B4F/3, 13, 18; B11F/5; B13F/4; B13F/8, 11). In addition, as discussed above, Mr. M.E.D. does not have "marked" limitation in any of the area of mental functioning.

[R. 6 at 36.] Substantial evidence supports the ALJ determination. *See Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 644 (6th Cir. 2006). The ALJ noted in the record that M.E.D.'s "allegations are not fully consistent with the longitudinal evidence showing conservative treatment with largely normal examination findings," specifically noting that although M.E.D. "alleges multiple weekly seizures, he has routinely presented as alert and oriented (exh. B1F/10; B4F/3, 13, 18; B5F/4; B11F/5; B13F/4; B7F/2). Additionally, he has denied headaches and dizziness (exh. B10F/2)." [R. 6 at 38.] The ALJ further explained her findings as to M.E.D.'s seizure activity, stating that:

> treatment records from December 2020, note generalized idiopathic epilepsy and epileptic syndromes, not intractable and without status epilepticus (exh. B4F/3). In April 2021, it was noted that Mr. [M.E.D.] had not had any new seizures and was in good compliance with treatment (exh. B4F/6). Treatment records from November 2021, note the same specifically noting that the course had been stable and nonprogressive (exh. B4F/11). Similarly, treatment records from January 2022, note no concern for seizure activity (exh. B13F/6). In July 2022, Mr. [M.E.D.] reported several recent mild seizures like activity (exh. B13F/2). However, upon examination he was alert and oriented, in no acute distress, preserved recent and remote memories, retained good attention span, normal facial sensation, and retained intact neurological functioning (exh. B13F/4). In February 2024, Mr. [M.E.D.] reported a breakthrough seizure (exh. B13F/10). However, upon examination

6

> he was alert and oriented with normal neurological functioning (exh. B13F/11). Furthermore, as discussed above, he has routinely presented as alert and oriented (exh. B1F/10; B4F/3, 13, 18; B5F/4; B11F/5; B13F/4; B7F/2).

[*Id.* at 39–40.]

The ALJ found that the record failed to document any marked limitation in physical functioning or in any of the mental functioning categories. [*Id.* at 36.] The ALJ based this finding on M.E.D.' treatment records, interactions with treating physicians and other medical professionals, and consultative examiners' review of his records. [*Id.* at 34–36, 40, 112–13, 121–22.] The ALJ further determined that clinical evidence showed that M.E.D. did not demonstrate marked limitation in physical functioning to meet Listing 11.02(D). [*Id.* at 36–37.] M.E.D. argued that new evidence requires a finding that he "should meet marked limitation in physical functioning, particularly now that he is prescribed a walker with a seat," but evidence of a subsequent change in condition after an administrative hearing is immaterial. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003).

M.E.D. takes issue with the ALJ's consideration of a third-party function report submitted by his mother. [R. 10 at 17.] The ALJ acknowledged the report while finding that M.E.D.'s mother "largely echoed Mr. M.E.D.'s allegations, which are not fully supported by the unremarkable imaging and physical examinations seen throughout the record . . . Furthermore, there is no indication that Mr. M.E.D.'s mother is an acceptable medical source." [R. 6 at 41.] M.E.D. further objects to the ALJ's findings that the opinions of Dr. Lima, Nurse Michell Blackburn, Dr. Kimmell, and Nurse Collett were not persuasive. In each case, the ALJ appropriately explained why she did not find the opinions persuasive, citing to the longitudinal evidence elsewhere in the record. [*Id.* at 40–41.] Plainly, there is substantial evidence supporting the ALJ's decision that M.E.D.'s impairments did not meet the listed requirements of any listed

7

impairment. M.E.D. may disagree with the ALJ's analysis and point to other evidence in the record that supports his position. But a reviewing court should affirm the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). A district court does not "resolve conflicts in the evidence" or "decide questions of credibility." *Ulman*, 693 F.3d at 713. That is precisely what M.E.D. asks this Court to do. M.E.D.'s disagreement with the ALJ's consideration of the totality of the evidence does not render the ALJ's decision unsupported by substantial evidence. Having reviewed the briefing and the record, the Court is satisfied that the ALJ relied on—and appropriately cited—substantial evidence from the administrative record in making her determination.

### III

Thus, after reviewing the record, the Court finds that the ALJ's decision is supported by substantial evidence. Even if the evidence could also support another conclusion, the ALJ's decision must stand because the evidence reasonably supports her conclusion. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff M.E.D.'s Brief [R. 10] is **DENIED**.
2. The Commissioner's Decision is **AFFIRMED**.
3. **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

This 2d day of March, 2026.

Gregory F. Van Tatenhove
United States District Judge